# United States Court of Appeals for the Federal Circuit

---

**JASON CARL KENNEDY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2016-1512

---

Appeal from the United States Court of Federal Claims in No. 1:13-cv-00165-MMS, Judge Margaret M. Sweeney.

---

Decided: January 17, 2017

---

JASON CARL KENNEDY, Denver, CO, argued pro se.

WILLIAM JAMES GRIMALDI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by REGINALD T. BLADES, JR., ROBERT E. KIRSCHMAN, JR., BENJAMIN C. MIZER.

---

Before NEWMAN, CLEVENGER, and DYK, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* CLEVENGER.

Opinion concurring in part, dissenting in part filed by *Circuit Judge* NEWMAN.

CLEVENGER, *Circuit Judge*.

Jason Carl Kennedy was disenrolled from the Navy Reserve Officer Training Corps (NROTC) program at George Washington University (GWU) in Washington, DC, after he failed to complete the required course at the Officer Candidate School (OCS) in Quantico, VA. Mr. Kennedy challenged his disenrollment by suit in the United States Court of Federal Claims. As Mr. Kennedy's claim for monetary relief involved a challenge to his Navy records, the Court of Federal Claims directed the case to the Board for Correction of Naval Records (BCNR), a civilian body that exists to make necessary corrections in Naval Records. The BCNR concluded, with affirmation from the Secretary of the Navy, that Mr. Kennedy's disenrollment must stand. Upon return from the BCNR, the Court of Federal Claims held that Mr. Kennedy's disenrollment was lawful and that Mr. Kennedy's claims for monetary relief thus lacked merit. *Kennedy v. United States*, 124 Fed. Cl. 309 (Nov. 30, 2015). Mr. Kennedy timely appealed to this court. For the reasons set forth below, we reverse.

I

Mr. Kennedy enrolled as an undergraduate at GWU in August of 2003. He applied for an NROTC scholarship (which would cover his tuition and other education related costs) in February of 2004, during the spring term of his freshman year. On March 16, 2005, in the spring term of his sophomore year, he was awarded a three year NROTC scholarship. Pursuant to the scholarship, Mr. Kennedy agreed to complete satisfactorily his college education and any educational requirements imposed on him by the Navy and the Marine Corps. Among such requirements was successful completion of a six week term at the OCS in Quantico, VA, a requirement which is not waivable.

The scholarship provided that if Mr. Kennedy failed to complete the educational requirements, including the military requirements, he could be disenrolled and become liable to reimburse the United States for the educational costs expended on his behalf.

Beginning in May of 2005, Mr. Kennedy suffered emotional, physical and sexual abuse by a family member, and as a result he began to act abnormally. In November of 2005, in the fall of his junior year, he was required to go to the GWU Center Clinic for observation, after having been expelled from campus housing following a physical altercation with his roommate and an attempt to throw himself out of a dormitory room window. The GWU Hospital diagnosed Mr. Kennedy with Adjustment Disorder, and he attended six therapy sessions thereafter.

At the end of May in the spring term of his junior year in college, Mr. Kennedy went to Quantico to attend OCS. On two occasions at Quantico, Mr. Kennedy lost control of his emotions, and sought counsel from the chaplain on numerous occasions. In the third week at Quantico, his platoon commander recommended that Mr. Kennedy be disenrolled from OCS as emotionally unstable. His company commander noted that Mr. Kennedy "breaks down in tears when faced with stress or responsibility." *Kennedy*, 124 Fed. Cl. at 315; J.A. 1138. Mr. Kennedy's company and battalion commanders recommended disenrollment without opportunity to reapply, due to their concerns about Mr. Kennedy's ability to handle himself in front of Marines and in combat. A Commanding Officer's Board was convened on June 22, 2006, and it disenrolled Mr. Kennedy from OCS without opportunity to return.

On August 7, 2006, the commanding officer of the GWU NROTC unit informed Mr. Kennedy that a Performance Review Board (PRB) would be convened on August 17, 2016, to evaluate his suitability for continuing in the NROTC program. The commanding officer told Mr.

Kennedy of his right to appear before the PRB and advised him to do so, explaining that the PRB could recommend his disenrollment from the NROTC Program, based on his disenrollment from OCS without opportunity to return.

Mr. Kennedy's NROTC advisor, Captain Ward, sent a memorandum to the PRB, recommending Mr. Kennedy's disenrollment from the NROTC program, but without the additional penalty of reimbursement of the sums the government had already expended for Mr. Kennedy's education at GWU. On August 8, 2006, Captain Ward sent Mr. Kennedy an email message about the upcoming PRB, in which he commented as follows: "Although the paper work says there will be a formal board, we won't have one due to the CO [Commanding Officer], OCS not allowing your return. Your case is open and shut – nothing disputable about it. You will see where I am recommending you not be responsible for reimbursement." J.A. 1144.

Whether the three member PRB physically met on August 17 is unclear, but the PRB members did sign a report under that date recommending disenrollment without the additional penalty of reimbursement. The report indicated that Mr. Kennedy was "not present." J.A. 1145. The PRB recommendation went to the commanding officer of the GWU NROTC Unit, who recommended disenrollment, but with recoupment of costs already expended by the government. That recommendation went further up the Marine Corps chain of command to the Recruiting Command and finally to the Secretary of the Navy's authorized representative (the Assistant Secretary of the Navy for Manpower and Reserve Affairs). All along the chain of command, the reason for the recommendation of disenrollment and recoupment of costs was the failure to complete OCS. On February 16, 2007, the Assistant Secretary approved the recommendation of disenrollment with recoupment of $50,675 of educational

assistance Mr. Kennedy had received. Shortly thereafter, on March 16, 2007, the Commanding General of the Marine Corps Recruiting Command executed a letter to the GWU NROTC Unit ordering that Mr. Kennedy be disenrolled from the Unit and separated from the Marine Corps.

After graduation from GWU in May of 2007, Mr. Kennedy attended and graduated from law school and was admitted to the bar of the State of Colorado.

Thereafter, Mr. Kennedy brought suit in the United States Court of Federal Claims, as noted above. His amended complaint set forth several causes of action, in which he sought relief from the recoupment obligation that he was fulfilling, and sought compensation for the costs of his GWU education that were not paid by the government. First, the government had not paid the tuition for the first semester of his sophomore year (the semester before the award of his scholarship). Second, it had not paid for his senior year (Fall 2006 and Spring 2007), due to his disenrollment by then from OCS, thus breaching his obligation under the scholarship agreement. Mr. Kennedy stopped receiving scholarship benefit payments in August of 2006. His complaint alleged breach of contract and also violations of law and regulations in connection with his disenrollment from the NROTC program.

The United States filed a motion on December 20, 2013, to send the case to the BCNR to enable the BCNR to consider Mr. Kennedy's complaint and requests for relief, and to correct his Navy records if necessary. Mr. Kennedy opposed the motion, but the court held that it had discretion to hear the claims in the first instance or to send the case to the BCNR, and thought it prudent to afford Mr. Kennedy the opportunity to be heard first by the BCNR. Accordingly, the court sent the case to the BCNR on January 23, 2014, ordering the BCNR to let Mr.

Kennedy respond to the Navy's disenrollment decision and to consider whether reimbursement of scholarship tuition is appropriate if disenrollment is sustained.

In due course, Mr. Kennedy filed a thirteen-count statement, accompanied by his court complaint, at the BCNR. Mr. Kennedy sought correction of his Naval record in several specific regards. His fundamental claim was that he was improperly disenrolled from the NROTC program. To correct that asserted error, he asked that his record be corrected to delete all references to his disenrollment and to show that he could reapply to OCS. Further, he sought a corrected record showing that he was retained in the NROTC program up to his graduation day, that he was entitled to scholarship benefits for three years, and that he should be relieved of any obligation to reimburse the government for educational benefits received.

The BNCR forwarded Mr. Kennedy's request for correction to the Naval Service Training Command for an advisory opinion. On July 7, 2014, the advisory opinion concluded that Mr. Kennedy's disenrollment was proper and that the obligation to repay his scholarship monies was not unreasonable. On October 15, 2014, the BCNR issued its decision. The BCNR agreed with the advisory opinion in all regards but one: the BCNR concluded that Mr. Kennedy had been denied the opportunity to appear before the August 17, 2006 PRB, and that this violation of his rights warranted some relief for Mr. Kennedy, namely that he be relieved from reimbursing the government for the three semesters worth of financial aid that he had received and be repaid for the amount the government had already recouped. The BCNR thus ordered the correction of Mr. Kennedy's Navy records to show that the $50,567.00 of benefits paid should not be recouped and that he should be repaid the sums he had already returned. The Assistant Secretary of the Navy for Man-

power and Reserve Affairs reviewed and approved the BCNR decision.

Upon return to the Court of Federal Claims, the court entertained joint motions for judgment on the administrative record, and the government's motion to dismiss the case. Mr. Kennedy's amended complaint pitched five counts, all seeking money damages. His first three contract-based claims are for "full benefits under the NROTC Scholarship Service Agreement," arguably entitling him to all funds that he had paid back, and to funds he did not receive for his first sophomore semester and his two senior year semesters. His fourth and fifth claims alleged that his disenrollment violated money mandating statutes, entitling him to monetary relief.

## II

We exercise jurisdiction pursuant to 28 U.S.C. § 1295(a)(3). We review the legal conclusions of the Court of Federal Claims de novo. *Renda Marine, Inc. v. U.S.*, 509 F.3d 1372, 1378 (Fed. Cir. 2007). We review its factual findings for clear error. *Id.*

The Court of Federal Claims found that it lacked jurisdiction to entertain Mr. Kennedy's first three contract-based claims. Mr. Kennedy does not appeal that ruling, and we thus need not consider those claims.

For purposes of analysis under the applicable six-year statute of limitations in 28 U.S.C. § 2501, the Court of Federal Claims separated Mr. Kennedy's claim regarding his first sophomore semester from his claim for the two semesters of his senior year. Regarding the former, the Court of Federal Claims held that claim to have accrued in March of 2005, after Mr. Kennedy executed his enlistment agreement but had not received payment for the previous semester. Because this claim predates and is unrelated to Mr. Kennedy's later disenrollment, the Court of Federal Claims held it time-barred by the six-year

statute of limitations, as Mr. Kennedy only filed his complaint on March 5, 2013. We agree that Mr. Kennedy's claim regarding the first semester of his sophomore year is time-barred.

As to Mr. Kennedy's fourth and fifth claims based on the alleged wrongful disenrollment, the Court of Federal Claims found these claims timely asserted, and noted that the BCNR had already provided Mr. Kennedy with relief concerning scholarship benefits for the spring 2005 semester and the 2005–2006 academic year, when it upset the recoupment order and ordered reimbursement of the sums he had already paid back. The Court of Federal Claims thus focused on Mr. Kennedy's remaining monetary claims for his senior academic year.

To the extent Mr. Kennedy's remaining claims depended on adjudication of the merits of the Navy's decision to disenroll Mr. Kennedy from OCS and the NROTC program, the Court of Federal Claims correctly held that the adjudication of those merits were not justiciable, because the decision "pertained to who should be permitted to serve in the Marine Corps, [which is] solely within the province of the Navy." *Kennedy*, 124 Fed. Cl. at 329. *See Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983); *Sargisson v. United States*, 913 F.2d. 918, 922 (Fed. Cir. 1990). There remained, however, three arguments by Mr. Kennedy in support of his claim for monetary relief for his senior academic year. Because those arguments questioned whether a statute or regulation had been violated in connection with his disenrollment from NROTC, the Court of Federal Claims properly asserted jurisdiction over, and decided, those arguments.

We agree with the Court of Federal Claims that Mr. Kennedy's fourth and fifth claims based on the alleged disenrollment are not time barred. A claim based on an alleged unlawful discharge accrues on the date of discharge. *See, e.g., Hurick v. Lehman*, 782 F.2d 984, 986

(Fed. Cir. 1986). Thus, Mr. Kennedy's claims accrued on March 16, 2007, and he filed his complaint within the six-year statute of limitations.

First, Mr. Kennedy argued that the Navy failed to conduct a required medical examination before disenrolling him, thus violating statutory and regulatory rights and consequently undermining the legitimacy of his disenrollment. Second, he argued that the Navy failed to convene a PRB at the initiation of his disenrollment process, thus violating his rights and requiring his reinstatement. Third, he argued that he had been denied the right to appear before the August 17 PRB, again with the effect of undermining the legality of his disenrollment. The Court of Federal Claims concluded that each of these arguments lacked merit. As explained below, we agree on the first two issues, but not the third.

It is undisputed that Mr. Kennedy did not have a medical examination in connection with his disenrollment. The statute and regulation on which he relies to show entitlement to a medical examination, 10 U.S.C. § 2107(j) and DoDI 1215.08, sec. 6.10.1, do not apply to his case. As the Court of Federal Claims observed, the statute provides that payment of financial assistance under the NROTC program may be suspended for health-related incapacity only in accordance with promulgated regulations. The pertinent regulation specifies that such assistance may be suspended when an involuntary medical leave of absence from the program is being considered, and in such circumstances, a medical examination of the student in question is required. In short, the statute and regulation exist to provide medical examinations in the instances in which the government wishes to impose an involuntary medical leave of absence. Such is not the case here. Mr. Kennedy was not being considered for a leave of absence. Mr. Kennedy was deemed unqualified to serve as an officer in the Marine Corps and thus was disenrolled from the NROTC program.

Regarding Mr. Kennedy's second argument, the Court of Federal Claims correctly found that the record does show that a PRB was convened, albeit without a physical meeting, and resulted in a formal recommendation up the chain of command. Indeed, Mr. Kennedy was informed of the PRB's action and was afforded the opportunity to respond to the PRB decision. Mr. Kennedy does not challenge this holding.

Mr. Kennedy's third argument begins with the effect of Captain Ward's August 8 email. The Court of Federal Claims concluded that email deprived Mr. Kennedy of his opportunity to appear in person before the PRB. However, the Court of Federal Claims held that this deprivation "had no effect on [Mr. Kennedy's] disenrollment from the NROTC." *Kennedy*, 124 Fed. Cl. at 334. The court reasoned that in accordance with the pertinent regulations, Mr. Kennedy was required to complete OCS in order to qualify for an officer's commission upon graduation. Because the failure to complete OCS undermines a candidate's qualifications for a commission, and because the NROTC scholarship was for such a commission, the court concluded that Mr. Kennedy's disenrollment was inevitable. With the opportunity for successful completion of OSC barred to Mr. Kennedy, the court surmised that Mr. Kennedy's appearance before the PRB could not have prevented his disenrollment.

The court's analysis turns on whether the decision by the Commanding Officer's Board at Quantico, denying Mr. Kennedy the opportunity to return, was final, i.e., not subject to reversal by a recommendation by a PRB, or the BCNR, and a decision by the Secretary of the Navy. If the authority to grant admission to OCS is finally delegated to the Commanding Officer's Board at Quantico, then Mr. Kennedy's disenrollment was inevitable. But if the Quantico authority over admission is not so final, Mr. Kennedy's disenrollment was not inevitable.

The initial briefing in this appeal did not answer the question concerning authority over admission to OCS. We asked the parties for supplemental briefing on the issue, and the supplemental briefs were also inconclusive. The issue, however, was clearly resolved at oral argument.

For disenrollment cases involving either recoupment or students obligated to active service (in this case, Mr. Kennedy satisfies both conditions), "SECNAV [the Secretary of the Navy] makes the final decision." CNETINST 1553.12G, § 315(a). Mr. Kennedy argued that this provision means that the Secretary, not the Commanding Officer's Board at Quantico, has the final say on who may attend OCS. In other words, whatever authority has been delegated to that Board, while likely of great weight, is not final. In response to the question whether the Secretary could overrule Quantico on admissions to OCS, the government responded, "yes." Oral Argument (Oct. 3, 2016) at 22:09–22:38.

At oral argument, Mr. Kennedy repeated his argument that the due process violation deprived him of the opportunity to make his case in person to the PRB that he be given another chance at OCS. Although the command at Quantico at the time stated that he should not have the opportunity to return, Mr. Kennedy points out that his platoon commander opined that he "needs to resolve his personal issues in a satisfactory manner and return to OCS once they are resolved." J.A. 1137. Further, Mr. Kennedy's company commander opined that "[h]e may be capable of returning to OCS at a later date if he could pull himself together." J.A. 1138. At oral argument, the government conceded that, had Mr. Kennedy appeared in person before the August 17, 2006 PRB, it is possible that the PRB could have awarded him greater relief than the waiver of tuition recoupment that it did recommend. According to the government, such greater relief could have included further tuition payments, and if the PRB denied his request to return to OCS, the government

agreed that Mr. Kennedy could have pursued that denial up the chain of command all the way to the Secretary. The government agreed that the Secretary is authorized and not estopped to instruct Quantico to admit a student to OCS.

CONCLUSION

Given the concession by the government that Mr. Kennedy's due process rights had been violated when he was dissuaded from attending his PRB, and its concession that the error was not harmless, it is clear that the Court of Federal Claims erred in concluding that Mr. Kennedy's disenrollment was inevitable because Quantico deemed him unfit to return. On this limited point, the Court of Federal Claims must be reversed.

At oral argument, the parties agreed that it is not possible to reconvene the PRB that met on August 17, 2016, but it is possible for the BCNR to hear the case Mr. Kennedy would have made to the PRB, and to recommend to the Secretary that Mr. Kennedy receive further relief. The proper course therefore is for this court to reverse the judgment that the violation of Mr. Kennedy's due process rights was harmless and remand the case to the Court of Federal Claims for it promptly to direct the case again to the BCNR, with instructions that the BCNR promptly consider Mr. Kennedy's case and recommend such further relief for him it deems appropriate.

**REVERSED**

COSTS

Costs to Mr. Kennedy.

# United States Court of Appeals for the Federal Circuit

---

**JASON CARL KENNEDY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2016-1512

---

Appeal from the United States Court of Federal Claims in No. 1:13-cv-00165-MMS, Judge Margaret M. Sweeney.

---

NEWMAN, *Circuit Judge,* concurring in part, dissenting in part.

I agree that the Court of Federal Claims correctly sustained the holding of the Board for Correction of Naval Records (BCNR) that Mr. Kennedy is not required to reimburse the government for the tuition payments made to George Washington University on his behalf while he was enrolled in the Naval Reserve Officers Training Corps (NROTC), and that the reimbursement that he has paid should be returned.

However, I do not join the court's decision ordering the BCNR, on constitutional and harmful error grounds, to conduct further review to "possibly" recommend "fur-

ther relief," Maj. Op. at 12. Such possible relief is unde-fined, and the BCNR and the courts have responded to any justiciable issues raised by Mr. Kennedy. Mr. Kennedy is not entitled to receive from the government the tuition he paid before and after his period of enrollment in the NROTC program.

The decision to disenroll Mr. Kennedy from the NROTC program was a necessary consequence of his failure to complete the required Officer Candidate School program at Quantico. CNETIST 1553, 12G, ¶ 501(e). Mr. Kennedy did not request reversal of the Navy's fitness-to-serve determination, which was endorsed by three levels of commanders at Quantico and made after a hearing before the Commanding Officer's Board.[1] The courts lack competence to revisit that fitness-to-serve determination. *See Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) ("[I]t is difficult to conceive of an area of governmental activity in which the courts have less competence" than "decisions as to the composition, training, equipping, and control of a military force").

---

[1]    The Secretary of the Navy has delegated NROTC training to the Chief of Naval Education and Training (CNET). CNETINST 1553, 12G, ¶ 102(c). CNET delegates authority over Marine Corps Option scholarship students to the Marine Corps Recruiting Command (MCRC). CNETINST 1553, 12G, ¶ 502(a). All NROTC students must

> undergo a 6-week training and evaluation period at Officer Candidate School, Marine Corps Combat Development Center, Quantico, Virginia. This requirement for completion of Marine Corps summer training will not be waived.

CNETIST 1553, 12G, ¶ 502(c) (underline in original).

The record documents instances of Mr. Kennedy's mental instability, including expulsion from campus housing in November 2005 after an altercation with his roommate, an attempt to fling himself out of a window, and psychological counseling. J.A. 1131. At Officer Candidate School, the record documents several instances of Mr. Kennedy's breaking into tears during training. Following reports by his platoon, company, and battalion commanders of emotional instability, Mr. Kennedy appeared before a Commanding Officer's Board at Quantico on June 22, 2006. The record contains the handwritten notes of the Commanding Officer, including:

> 3) You have demonstrated you can't remain calm. My question is, do I allow you to come back?
> 4) Cand[idate] isn't having problems w/ OCS but w/ family
> 5) What is the issue?
> 6) Cand[idate] needs to work it out @ home
> 7) Can it be fixed?
> 8) Cand[idate] doesn't know.
> 10) Ok then I'm going to Disenroll you & not allow you to reapply

J.A. 1139. The D.C. Circuit, considering a constitutional question raised by disenrollment from Officer Candidate School, stated that:

> The district court properly granted summary judgment on appellant's claim that his disenrollment from Officer Candidate School denied him due process because there is no property or liberty interest in a military promotion *per se*. Nor has appellant pointed to any statute or regulation limiting the Navy's discretion to disenroll an OCS trainee.

*Yamashita v. England*, No. 02-5176, 2002 WL 31898182, at *1 (D.C. Cir. Dec. 23, 2002) (internal citations omitted).

Mr. Kennedy did not dispute his dismissal from Officer Candidate School, but now argues that he was denied due process in his dismissal from the NROTC program because he did not have the opportunity to appear before the Performance Review Board when it considered disenrollment. My colleagues hold that the disenrollment recommendation of the Performance Review Board, made in view of his discharge from Officer Candidate School without permission to reapply, since made without Mr. Kennedy's presence, was harmful error warranting judicial intervention. The record shows that the disenrollment recommendation was adopted by the commanding officer of the NROTC, who made his own recommendations, which were then reviewed by the Chief of Naval Education and Training, then by the Naval Service Training Command, then by the Marine Corps Recruiting Command, then forwarded to the Assistant Secretary of the Navy for Manpower and Reserve Affairs. This court has recognized that "judicial deference to administrative decisions of fitness for duty of service members is and of right should be the norm." *Maier v. Orr*, 754 F.2d 973, 984 (Fed. Cir. 1985).

The record also shows that Mr. Kennedy agreed that he was not then suited for Marine leadership. In his written response to the NROTC commanding officer's disenrollment recommendation, Mr. Kennedy wrote:

> I still want to serve my country, but I am unable due to lost mental stability, through no fault of my own, and thus my ability to serve my country.

J.A. 1154. Although Mr. Kennedy now requests that his Naval records be changed to show that he completed the full NROTC program, according to the record Mr. Kennedy did not request reinstatement in the NROTC, and the BCNR declined to change his Naval records. *See Dodson v. United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993)

("The military is entitled to substantial deference in the governance of its affairs.").

Although my colleagues recognize that the decision of whether Mr. Kennedy "should be permitted to serve in the Marine Corps [is] solely within the province of the Navy," *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed. Cir. 1983), the court's remand for the BCNR now to "hear the case Mr. Kennedy would have made to the PRB," Maj. Op. at 12, is on the premise that the Navy's procedures that led to his disenrollment were subject to major flaw. I cannot agree. *See Orloff v. Willoughby*, 345 U.S. 83, 93 ("[J]udges are not given the task of running the Army.").

I discern no basis for further proceedings in the Court of Federal Claims and the Board for Correction of Naval Records. Thus I respectfully dissent from the court's remand action.