# United States Court of Appeals for the Federal Circuit

---

**LAKSHMI ARUNACHALAM,**
*Plaintiff-Appellant*

**v.**

**INTERNATIONAL BUSINESS MACHINES CORPORATION, SAP AMERICA, INC., JPMORGAN CHASE & CO.,**
*Defendants-Appellees*

**DOES 1-100,**
*Defendant*

---

2020-1493

---

Appeal from the United States District Court for the District of Delaware in No. 1:16-cv-00281-RGA, Judge Richard G. Andrews.

---

Decided: March 1, 2021

---

LAKSHMI ARUNACHALAM, Menlo Park, CA, pro se.

MARK J. ABATE, Goodwin Procter LLP, New York, NY, for defendant-appellee International Business Machines Corporation. Also represented by CALVIN E. WINGFIELD, JR.; KEVIN J. CULLIGAN, JOHN P. HANISH, Maynard, Cooper & Gale, PC, New York, NY.

THARAN GREGORY LANIER, Jones Day, Palo Alto, CA, for defendant-appellee SAP America, Inc.  Also represented by JOSEPH BEAUCHAMP, Houston, TX.

DOUGLAS R. NEMEC, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for defendant-appellee JPMorgan Chase & Co.  Also represented by EDWARD TULIN.

_____

Before LOURIE, WALLACH, and CHEN, *Circuit Judges.*

PER CURIAM.

Appellant, Dr. Lakshmi Arunachalam, appeals from three decisions of the U.S. District Court for the District of Delaware ("District Court"): two granting-in-part and denying-in-part attorneys' fees to Appellees, SAP America, Inc. ("SAP"), JPMorgan Chase & Co. ("JPMorgan"), and International Business Machines Corp. ("IBM"), *see Arunachalam v. Int'l Bus. Machines Corp. (Arunachalam I)*, No. CV 16-281-RGA, 2019 WL 1388625, at \*2 (D. Del. Mar. 27, 2019) (Memorandum); C.A. 11 (Order); *Arunachalam v. Int'l Bus. Machines Corp. (Arunachalam II)*, No. CV 16-281-RGA, 2019 WL 5896544, at \*3 (D. Del. Nov. 12, 2019) (Memorandum); C.A. 3–4 (Order); and one denying two of Dr. Arunachalam's additional motions, C.A. 1–2 (Order Denying Motions to 'Enforce the Mandated Prohibition' and to Vacate Its 'Unconstitutional Order').[1]  The District Court explained that Dr. Arunachalam's "abusive" litigation conduct warranted monetary sanctions, *Arunachalam I*, 2019 WL 1388625, at \*2; *see Arunachalam II*, 2019 WL 5896544, at \*1, and that her two later-filed motions were

_____

[1]    "A.A." refers to the appendix attached to Dr. Arunachalam's opening brief, and "C.A." refers to the corrected appendix attached to Appellees' response brief.

baseless and untimely, C.A. 2.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).  We affirm.

BACKGROUND

The relevant facts are numerous and colorful.  In April 2016, Dr. Arunachalam filed suit in the District Court against IBM and "Does 1-100," alleging infringement of U.S. Patent No. 7,340,506 ("the '506 patent") and violations of the Racketeer Influenced and Corrupt Organizations Act ("the RICO Act"), 18 U.S.C. § 1962, *et. seq.* C.A. 46; *see* C.A. 45–68 (Original Complaint).[2]  The case was assigned to Judge Richard G. Andrews.  C.A. 22; *see* C.A. 19–44 (Civil Docket).

In May 2016, Dr. Arunachalam filed an amended complaint, adding SAP, JPMorgan, and Judge Andrews as defendants.  C.A. 83; *see* C.A. 83–100 (Amended Complaint).  In the Amended Complaint, Dr. Arunachalam repeated her allegation of infringement of the '506 patent by IBM (Count I), C.A. 93, and further alleged that all the defendants had engaged in "[c]ivil [r]acketeering," (Count II), C.A. 96; violated the RICO statute (Count III), C.A. 98, and conspired "to engage in a pattern of racketeering activity," (Count IV), C.A. 99 (capitalization normalized); *see* C.A. 96 (accusing IBM, SAP, JPMorgan, and Judge Andrews of "RICO [p]redicate [a]cts"); 18 U.S.C § 1961(1) (listing predicate "racketeering activit[ies]" under the RICO Act, including "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in

---

[2]    The RICO Act provides, in relevant part, that "[i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b).

obscene matter, or dealing in a controlled substance or listed chemical").

Appellees moved to dismiss Counts II–IV of the Amended Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).  C.A. 22; *see* C.A. 110 (SAP arguing that Dr. Arunachalam's patent infringement allegations did not qualify as "predicate acts" under the RICO Act), 112 (IBM contending the same and asking the District Court "to exercise its inherent power and enter an appropriate sanction against [Dr. Arunachalam] for filing spurious RICO claims").  Dr. Arunachalam opposed Appellees' motion to dismiss, C.A. 27, and Appellees filed reply briefs, C.A. 27–28.  Dr. Arunachalam also filed a motion to recuse Judge Andrews from the case, C.A. 26, and a motion for entry of default judgment against Judge Andrews, C.A. 27.[3]

The Government filed a Statement of Interest on behalf of Judge Andrews, C.A. 115, which the District Court "construed as a motion to dismiss" the claims against Judge Andrews, C.A. 25–26; *see* C.A. 115 (Statement of Interest) (requesting that the District Court "dismiss with prejudice" the claims against Judge Andrews).    At Judge Andrews's request, the District Court referred ruling on the Government's Statement of Interest and motion to dismiss to Chief Judge Leonard P. Stark.  C.A. 28, 116.  Dr. Arunachalam then moved to recuse Chief Judge Stark.  C.A. 28.

In a September 2016 order, Chief Judge Stark denied Dr. Arunachalam's motion to recuse him.  C.A. 116; *see* C.A. 116–120 (September 2016 Order).  Chief Judge Stark also dismissed the claims against Judge Andrews and dismissed him as a defendant.  C.A. 119–20; C.A. 119

---

[3]    The Clerk of the District Court denied Dr. Arunachalam's motion for entry of default judgment.  C.A. 27.

(explaining that "[n]ot only are the allegations raised against Judge Andrews conclusory, they also speak to actions taken by him in performance of his judicial duties," and thus "seek[] relief barred by the well-established doctrine of judicial immunity"). In February 2017, Judge Andrews denied Dr. Arunachalam's motion to recuse him. C.A. 30–31.

In March 2017, the District Court granted Appellees' motion to dismiss Counts II–IV of the Amended Complaint, C.A. 122 (Order Dismissing Counts II–IV), explaining that because "[p]atent infringement is not a crime," it is "not on the extensive list of crimes that can be a racketeering [predicate] act," C.A. 121 (Memorandum Regarding Motions to Dismiss) (citing 18 U.S.C § 1961(1)). Though Dr. Arunachalam had alleged "a laundry list of federal crimes," the District Court found that her "[A]mended [C]omplaint makes no plausible factual allegations to support any of them." C.A. 121.[4] The District Court also granted Dr. Arunachalam "leave to file a motion to amend complying with [the District Court's Local Rule] 15.1," and dismissed SAP and IBM's requests for sanctions "without prejudice to later renewal." C.A. 122.

---

[4] Despite the District Court's dismissal of Dr. Arunachalam's RICO claims against IBM, SAP, and JPMorgan, Dr. Arunachalam reasserted these claims in a later action filed in the U.S. District Court for the Northern District of California. *See Arunachalam v. Apple, Inc.* (*Arunachalam N.D. Cal.*), No. 5:18-CV-01250-EJD, 2018 WL 5023378, at \*3–4, \*4 n.2 (N.D. Cal. Oct. 16, 2018), *aff'd*, 806 F. App'x 977 (Fed. Cir. 2020) (dismissing Dr. Arunachalam's "confusing" and "disorganized" claims of, inter alia, "RICO violations" against IBM, SAP, and JPMorgan, as well as ten other defendants, and noting that the claims were "identical to the RICO claims brought against IBM, SAP, and JPMorgan . . . in the District of Delaware").

Dr. Arunachalam next filed a motion to vacate the District Court's dismissal of Counts II–IV of the Amended Complaint, and another motion to recuse Judge Andrews. C.A. 31.[5] Dr. Arunachalam then filed a motion for leave to amend her pleadings, C.A. 31–32, which the District Court denied in January 2018, explaining that Dr. Arunachalam's 102-page proposed second amended complaint violated the District Court's Local Rule 15.1, C.A. 124–25. As Dr. Arunachalam had been "explicitly told to comply with the rule," the District Court found that her failure to do so was "willful and in bad faith." C.A. 124. The District Court also prohibited "[a]ny further attempt to amend . . . without leave of court," and stated that "[t]he case will proceed" as to the sole remaining claim in the Amended Complaint, Count I, alleging infringement of claims 20 and 21 of the '506 patent. C.A. 124.[6]

Meanwhile, in December 2017, the U.S. Patent & Trademark Office's Patent Trial & Appeal Board ("PTAB") issued a Final Written Decision ("the PTAB Decision") finding that "claims 20 and 21 of the '506 Patent are unpatentable" and denying Dr. Arunachalam's motion to amend to add proposed new claims 22–49. *SAP Am., Inc. v. Arunachalam*, No. CBM2016-00081, 2017 WL 6551158, at *23 (P.T.A.B. Dec. 21, 2017).[7] After the period for an appeal of

---

[5]    In June 2017, Dr. Arunachalam filed a third motion to recuse Judge Andrews, while her second motion was still pending. C.A. 32.

[6]    The District Court also denied Dr. Arunachalam's motion to vacate its order dismissing Counts II–IV of the Amended Complaint, as well as Dr. Arunachalam's second and third motions to recuse Judge Andrews. C.A. 32.

[7]    Previously, in an inter partes reexamination, the Patent Examiner rejected claims 1–19 of the '506 patent, which the PTAB affirmed. *Microsoft Corp. v. WebXchange,*

the PTAB Decision had expired without an appeal by Dr. Arunachalam, IBM moved to dismiss Count I of the Amended Complaint. C.A. 126. IBM argued that because Dr. Arunachalam "has not timely appealed from the PTAB's [D]ecision," the PTAB would "issue a certificate of cancellation of claims 20 and 21 of the '506 patent—the only remaining claims in the patent-in-suit," and thus "[a] dismissal with prejudice is . . . appropriate." C.A. 126. Dr. Arunachalam opposed dismissal of Count I, arguing that "[t]here [was] no need for [her] to appeal the PTAB's ultra vires unconstitutional and hence void decision 'invalidating' the '506 patent, because the PTAB Judges" lacked "jurisdiction and immunity." C.A. 127; *see* C.A. 127 (Dr. Arunachalam arguing that "the lawless misconduct and Constitutional public breach and fraud by the PTAB and the Federal Circuit . . . voids their rulings and cause[s] them to lose their jurisdiction" and that we had "refused to uphold" our own precedent "in a blatant civil rights discrimination against [her]").

In May 2018, the District Court granted IBM's motion to dismiss Count I with prejudice, concluding that the PTAB Decision "mean[s] there are no valid claims in the '506 patent to assert." C.A. 129–30; *see* C.A. 129–31 (Dismissal Order).[8] Dr. Arunachalam then filed a motion for

---

*Inc.*, No. 2013-008997, 2014 WL 2968085, at *23 (P.T.A.B. June 27, 2014).

8    The District Court also dismissed Dr. Arunachalam's motion for leave to file a sur-reply to IBM's motion to dismiss, as well as a motion "for this court to give a statement of decision on whether contract law applies to patents," C.A. 34 (capitalization normalized), which the District Court construed as "essentially a request that [the court] find the PTAB system allowing for the invalidation of issued patents to be unconstitutional," C.A. 130. The District Court found "no basis for declaring the [Covered

reconsideration, styled as a "Motion to Alter or Amend a Judgment Pursuant to FRCP . . . 59(e), and Motion for Relief From a Judgment or Order Pursuant to [FRCPs] 60(b)(2), 60(b)(3), 60(b)(4), 60(b)(5), 60(b)(6), 60(d)(1) and 60(d)(3)." C.A. 34.[9] Appellees opposed Dr. Arunachalam's motion for reconsideration, C.A. 34, and SAP and IBM again sought sanctions, C.A. 132–33 (SAP "renew[ing] its request for sanctions," as "[n]otwithstanding th[e] [District] Court's dismissal of [Dr. Arunachalam's] RICO claims against SAP, [she] re-asserted her RICO cause of action against SAP in a subsequent lawsuit in N.D. California" and "is now seeking reconsideration of the [District] Court's dismissal of [her] RICO causes of action for the second time" (emphasis omitted)), 134 (IBM arguing that Dr. Arunachalam's motion for reconsideration "is the latest in a long line of frivolous motions and pleadings in an action that can only be characterized as vexatious" and renewing its request for sanctions).

In June 2018, the District Court denied Dr. Arunachalam's motion for reconsideration on all grounds. C.A. 138–39; *see* C.A. 137–39 (Order Denying Reconsideration). The District Court found that none of Dr. Arunachalam's cited "points and authorities" qualified "as a possible basis for reconsideration" under FRCP 59(e). C.A. 138 (citing *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) ("A proper [FRCP] 59(e) motion therefore must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice.")). The District Court also found that Dr. Arunachalam's "arguments citing various subsections of [FRCP] 60" were

---

Business Method] procedure to be unconstitutional." C.A. 131.

[9]    Dr. Arunachalam's motion for reconsideration is not in the record. *See generally* A.A.; C.A.

similarly meritless. C.A. 138*; see, e.g.*, C.A. 138 (explaining that Dr. Arunachalam sought "relief under [FRCP] 60(b)(3) claiming fraud, but she does not allege any fraud in this case").[10] The District Court then stated that though "SAP

---

[10] In July 2018, Dr. Arunachalam appealed virtually all of the District Court's orders to the Federal Circuit. C.A. 35. In January 2019, we affirmed "the [D]istrict [C]ourt's dismissal of the patent infringement claim against IBM, dismissal of all RICO claims against all defendants, denial of the motion for leave to file a second amended complaint, denials of motions to recuse, and all other district court rulings challenged by Dr. Arunachalam in this appeal." *Arunachalam v. Int'l Bus. Machines Corp.* (*Arunachalam III*), 759 F. App'x 927, 934 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 249 (2019), *reh'g denied*, 140 S. Ct. 578 (2019). We explained that the District Court "correctly dismissed the RICO claims for failure to state a claim" because "patent infringement is not a recognized predicate 'racketeering activity' for a RICO claim . . . [n]or do the rest of the pleadings sufficiently support any of the other alleged predicate acts." *Id*. at 931. We found that the District Court "did not abuse its discretion in denying Dr. Arunachalam leave to amend the complaint for a second time," because her proposed second amended complaint "still lack[ed] factual allegations to support a cognizable predicate act for RICO." *Id*. at 932. We also found that because Dr. Arunachalam did not timely appeal the PTAB Decision invalidating claims 20 and 21 of the '506 patent, the PTAB Decision "is final and may not be collaterally attacked through a separate litigation," thus mooting Count I's allegation of patent infringement. *Id*. at 933. Finally, we found that the District Court did not abuse its discretion in denying recusal of Judge Andrews and Chief Judge Stark, as Dr. Arunachalam had not

and IBM express an interest in attorneys' fees and/or other sanctions," any parties seeking attorneys' fees should file such requests "by separate motion." C.A. 139.

In July 2018, Appellees individually moved for sanctions in the form of attorneys' fees, as well as injunctions against further filings by Dr. Arunachalam. C.A. 36. After the motions for sanctions and pre-filing injunctions were fully briefed, Dr. Arunachalam moved for leave to file a surreply, which necessitated responsive briefing by Appellees. C.A. 38. The District Court granted Dr. Arunachalam leave to file a surreply, which she did not file. C.A. 39.

In March 2019, the District Court granted SAP and JPMorgan's motion for attorneys' fees for "defending against a baseless racketeering lawsuit," *Arunachalam I*, 2019 WL 1388625, at *2–3, and granted-in-part IBM's motion, *id.* at *3; *see id.* (awarding IBM attorneys' fees only for "two . . . pleadings," as Dr. Arunachalam's ownership of the '506 patent and history with IBM "made her racketeering suit against them a little more plausible [than against SAP and JPMorgan] if nevertheless still not even close to stating a colorable complaint"). The District Court did not rule on the specific fee amounts and ordered Appellees to submit further documentation. *Id.* at *4.[11]

Appellees then filed new motions for attorneys' fees with supporting materials. C.A. 39–40. In May 2019, Dr. Arunachalam filed her opposition, as well as a list of

---

contested the factual bases supporting the denials. *Id.* at 933–34.

[11] The District Court denied Appellees' motions for pre-filing injunctions, finding that SAP and IBM's proposed injunctions were not "narrowly tailored" and stating that "the imposition of monetary sanctions might be as effective in discouraging improper behavior." *Arunachalam I*, 2019 WL 1388625, at *1.

questions, styled as "Interrogatories Propounded to Defendants, their Counsel of Record and Hon. Judge Andrews." C.A. 41; *see* C.A. 140–41 (Interrogatories). This necessitated a responsive filing by Appellees. C.A. 41. Dr. Arunachalam then filed two motions requesting that Judge Andrews and "attorneys of record" produce to Dr. Arunachalam a copy of their oaths of office, "foreign registration statements," as well as "bond" and "insurance information." C.A. 41 (capitalization normalized). These motions also necessitated a responsive filing by Appellees. C.A 42.

In November 2019, the District Court granted JPMorgan and SAP's motions for attorneys' fees and granted-in-part IBM's motion for attorneys' fees. *Arunachalam II*, 2019 WL 5896544, at *3. The District Court awarded $57,190.40 to JPMorgan, $51,772.09 to SAP; and $40,000 to IBM. *Id.* at *2–3. The District Court also denied Dr. Arunachalam's two "frivolous" motions seeking oaths of office and additional information from Judge Andrews and "attorneys of record," another motion seeking to recuse Judge Andrews, and a motion seeking to recuse both Judge Andrews and Chief Judge Stark. *Id.* at *1.

Dr. Arunachalam then filed two additional motions, the first styled as "M[otion] And Notice to Enforce the Mandated Prohibition from Repudiating Government-Issued Contract Grants of Any Kind as Declared by Chief Justice Marshall in Fletcher [v]. Peck (1810) and Trustees of Dartmouth College [v]. Woodward (1819) Which Have Never Been Repudiated and Stand as the Law of the Land and Case, of Which this Courts Solemn Oath Duty Compels this Court to Enforce above All Else, with All Due Respect," C.A. 42 (Motion to Enforce the Mandated Prohibition), and the second as "M[otion] for the Court to Vacate Its Unconstitutional Order . . . and Enter a New and Different Order," C.A. 43 (Motion for the Court to Vacate Its

Unconstitutional Order).[12]  In January 2020, the District Court dismissed these two motions, explaining that Dr. Arunachalam had filed the first motion "in eight different cases," without reference "as to why it was filed in this case," and "cit[ing] no rules as to why it could possibly be timely."  C.A. 2.  The District Court construed the second motion "as a motion for reconsideration," but found that it "does not meet the standard for reconsideration because . . . what it is really challenging is the underlying decision that was affirmed by the Court of Appeals for the Federal Circuit"—i.e., the dismissal of Counts I–IV of the Amended Complaint—and "it is too late to move to reconsider that decision[.]"  C.A. 2.

## DISCUSSION

### I. The Court's Inherent Power to Impose Sanctions

#### A. Standard of Review and Legal Standard

"We review a court's imposition of sanctions under its inherent power for abuse of discretion."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991); *see Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994) ("This court reviews the lower court's use of its inherent power to impose sanctions under the abuse of discretion standard." (citing *Chambers*, 501 U.S. at 54–55)).  "An abuse of discretion occurs when a district court's decision commits legal error or is based on a clearly erroneous assessment of the evidence."  *Univ. of Utah v. Max-Planck-Gesellschaft zur Foerderung der Wissenschaften e.V.*, 851 F.3d 1317, 1322 (Fed. Cir. 2017).

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to

---

[12]   The full text of these motions is not in the record. *See generally* A.A.; C.A.

their lawful mandates." *Chambers*, 501 U.S. at 43 (internal quotation marks and citation omitted). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (internal quotation marks and citation omitted). Specifically, federal courts "may assess attorney[s'] fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45–46 (internal quotation marks and citation omitted); *see Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1378 (Fed. Cir. 2002) (holding that "the inherent power can be used to shift attorney[s'] fees when there has been . . . conduct that is in bad faith, vexatious, wanton, or for oppressive reasons"). "The imposition of sanctions" under a court's inherent power serves "the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Chambers*, 501 U.S. at 46 (internal quotation marks, citation, and alterations omitted).

## B. The District Court Did Not Abuse Its Discretion in Imposing Sanctions Against Dr. Arunachalam

The District Court, exercising its inherent authority, concluded that "monetary sanctions" were "a reasonable response to [Dr. Arunachalam's] conduct." *Arunachalam I*, 2019 WL 1388625, at \*3. The District Court explained that Dr. Arunachalam was an "abusive" and "prodigious litigant," who forced Appellees to defend "a baseless racketeering lawsuit" and to respond to numerous meritless motions and oppositions, "willful[ly] and in bad faith" failed to comply with the District Court's Local Rules and instructions, filed "repetitive motions for recusal" lacking a "valid basis," and otherwise engaged in "vexatious conduct." *Id.* at \*2–3. The District Court subsequently awarded $57,190.40 in attorneys' fees to JPMorgan, $51,772.09 to SAP, and $40,000 to IBM. *Arunachalam II*, 2019 WL

5896544, at *2–3. Dr. Arunachalam argues that we cannot "affirm the District Court's sanctions and attorneys' fees without offending the Constitution." Appellant's Br. 55 (capitalization normalized). We disagree with Dr. Arunachalam.

The District Court did not abuse its discretion in imposing monetary sanctions. The record amply demonstrates Dr. Arunachalam's vexatious and wanton litigation conduct. For example, Counts II–IV of the Amended Complaint accuse SAP and JPMorgan of three RICO violations, C.A. 96–100, yet the only factual allegations against them concern: the District Court's personal jurisdiction over them, C.A. 87–88; their alleged use of "[Dr. Arunachalam's] patented Web applications on a Web browser," C.A. 87; and their lack of a license "under the '506 patent," C.A. 91. As of the date of the issuance of this opinion, these allegations have embroiled SAP and JPMorgan in baseless litigation for over four and a half years. C.A. 22 (showing a filing date of May 2016 for the Amended Complaint). Even after the dismissal of her RICO claims against Appellees in the District Court, Dr. Arunachalam reasserted those same claims against Appellees in another action in the U.S. District Court for the Northern District of California, further evidencing her vexatious and bad faith conduct. *See Arunachalam N.D. Cal.*, 2018 WL 5023378, at *4, *4 n.2.

During litigation, Dr. Arunachalam forced Appellees and the District Court to expend resources responding to her repetitive, frivolous, and often bizarre oppositions and motions. C.A. 26–44 (showing a total of seven motions filed by Dr. Arunachalam to recuse Judge Andrews and two to recuse Chief Judge Stark), 34 (Dr. Arunachalam moving for reconsideration of the District Court's dismissal of Count I), 34 (Dr. Arunachalam moving for "a Statement of Decision on Whether Contract Law Applies to Patents"), 34–42 (detailing Appellees' responsive filings), 38 (Dr. Arunachalam moving for leave to file a surreply to Appellees' motions for sanctions, which she did not file after the

District Court's grant of leave), 41 (Dr. Arunachalam's two motions requesting that Judge Andrews and "attorneys of record" produce to her their oaths of office, "foreign registration statements," and insurance information), 127 (Dr. Arunachalam opposing dismissal of Count I of the Amended Complaint even after the PTAB had invalidated the relevant, and indeed, only remaining, claims of the '506 patent), 141 (Dr. Arunachalam asking in her "Interrogatories," filed after dismissal of all counts of the Amended Complaint, whether any of the Appellees, their counsel of record, or Judge Andrews had ever associated with, inter alia, "the Defense Advanced Research Projects Agency (DARPA)," and claiming that "Defendants have colluded with Judge Andrews and brazenly devised schemes to evade the Government and the laws of the United States"). Dr. Arunachalam also willfully failed to comply with the District Court's specific instructions regarding the filing of a second amended complaint. C.A. 122 (the District Court granting Dr. Arunachalam leave to file a motion to amend the Amended Complaint "complying with [the District Court's Local Rule] 15.1"), 124 (the District Court explaining that Dr. Arunachalam's 102-page proposed second amended complaint did not comply with its Local Rule 15.1).

Finally, the District Court awarded reasonable attorneys' fees. The District Court applied the "lodestar" approach, calculating attorneys' fees by "multiplying the amount of time reasonably expended by reasonable hourly rates[.]" *Arunachalam II*, 2019 WL 5896544, at *2 (quoting *Parallel Iron LLC v. NetApp, Inc.*, 84 F. Supp. 3d 352, 356 (D. Del. 2015)); *see Bywaters v. United States*, 670 F.3d 1221, 1225–26 (Fed. Cir. 2012) (explaining that "the amount of attorneys' fees to be awarded under the 'lodestar' approach" is calculated "by multiplying the number of hours reasonably expended by a reasonable hourly rate"). For SAP and JPMorgan, the District Court "reviewed the documentary support in relation to the actual billings," the

hourly rates charged, and the pleadings produced during the relevant periods. *Arunachalam II*, 2019 WL 5896544, at *3.[13]  The District Court concluded that the claimed hours and rates were "reasonable," and awarded SAP and JPMorgan their requested amounts of fees.  *Id.*; *see id.* (awarding $51,772.09 to SAP and $57,190.40 to JPMorgan).  The District Court performed the same analysis for IBM's requested $57,034.38 in fees, and found that though the rates and hours were reasonable, "the filings . . . appear to involve some billing for duplication of effort[.]"  *Id.* at *2.  Thus, the District Court awarded IBM fees in the reduced amount of $40,000.  *Id.*  Accordingly, the District Court did not abuse its discretion in imposing sanctions for Dr. Arunachalam's vexatious litigation conduct.  *See Chambers*, 501 U.S. at 45–46.

Dr. Arunachalam's counterargument is unpersuasive. Dr. Arunachalam contends, without offering more, that we cannot "affirm the District Court's sanctions and attorneys' fees without offending the Constitution," Appellant's Br. 55, specifically, her rights under the First, Fifth, Eighth, and Fourteenth Amendments, *id.* at 2–3. Dr. Arunachalam's assertions are insufficiently developed. "In order for this court to reach the merits of an issue on appeal, it must be adequately developed." *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1341 (Fed. Cir. 2006); *see id.* (holding that undeveloped arguments are "deemed waived"); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim.").  This argument is, accordingly, waived.

---

[13]  Dr. Arunachalam opposed Appellees' requested fees, arguing that "[n]ot one dollar is reasonable," "Defendants plagiarized each other," and took "less than [fifteen] minutes to write their briefs." *Arunachalam II*, 2019 WL 5896544, at *3.

### C. The Scandalous and Irrelevant Statements in Dr. Arunachalam's Briefs Are Stricken

Dr. Arunachalam's briefing before us is replete with scandalous and baseless allegations similar to those she made below, all presented without a semblance of factual support.[14]  Dr. Arunachalam alleges that Appellees and

---

[14]  "The court may," acting "on its own," "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f)(1).  Courts have applied several definitions for what constitutes "scandalous matter."  Courts may, for example, strike as "clearly . . . scandalous" a plaintiff's brief "contain[ing] many allegations wholly aside from the charges made in [the] complaint, and bearing reproachfully upon the moral character of individuals," *Green v. Elbert*, 137 U.S. 615, 624 (1891), or allegations "bear[ing] no possible relation to the controversy or [that] may cause the objecting party prejudice," *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992); *see Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 617–18 (1st Cir. 1988) (describing as scandalous "matter which impugned the character of defendants"); *Cobell v. Norton*, 224 F.R.D. 1, 5 (D.D.C. 2004) (stating that "scandalous" statements are those which "unnecessarily reflect[] on the moral character of an individual or state[] anything in repulsive language that detracts from the dignity of the court" (internal quotation marks and citation omitted)).  Further, courts have struck "scandalous matter" in a variety of contexts, such as when plaintiffs, without a factual basis, alleged the defendants had intentionally caused a salmonella outbreak at a dairy producer, *Talbot*, 961 F.2d at 664, and where a pro se plaintiff alleged, inter alia, "a world-wide religious inquisition" and "illegal wiretapping by the U.S. Government," *Atraqchi v. Williams*, 220 F.R.D. 1, 3 (D.D.C. 2004); *see id.* (describing the allegations as "immaterial, scandalous and frankly

"all counsel" have "collusively engaged in obstruction of justice, aided and abetted by Judges Stark and Andrews," Appellant's Br. 6, have "knowingly, willfully, intentionally, recklessly, [and] negligently ma[de] False Official Statements, causing damage to [Dr. Arunachalam's] patents and her pristine character/reputation," and have "us[ed] the courts as a vehicle to propagate libel," *id.* at 4–5; *see id.* at 2 (stating that Appellees, their counsel, and the PTAB have colluded "in a corrupt criminal enterprise"). She claims Appellees' counsel "have violated their solemn oaths of office," "must be disbarred and sanctioned," and that their "willful misrepresentations . . . constitute fraud on the [c]ourt." *Id.* at 16–17 (capitalization normalized). She alleges that "Appellees' attorneys engaged in a false propaganda of collateral estoppel from void Orders by financially-conflicted judges," *id.* at 11, and that the District Court "ke[pt] her gagged so as to prevent her from speaking to defend herself," *id.* at 8.

Further, Dr. Arunachalam makes multiple demonstrably false statements of fact in her briefing. For example, in her opening brief, Dr. Arunachalam states that "[n]o Federal Court [has] ruled that [her] Claims 1–21 of [her] '506 patent are invalid," Appellant's Br. 13, and that "the PTAB never reached the patent case" as to the validity of the '506 patent, *id.* at 16 (emphasis omitted). However, as noted above, the PTAB affirmed the Patent Examiner's cancellation of claims 1–19 of the '506 patent, *see Microsoft*, 2014

---

delusional"); *Collura v. City of Philadelphia*, 590 F. App'x 180, 185 (3d Cir. 2014) (affirming the district court's dismissal of a pro se complaint "replete with abusive language and ad hominem attacks" under FRCP 12(f)); *c.f. Chou v. Univ. of Chicago*, 254 F.3d 1347, 1366 (Fed. Cir. 2001) (finding the district court did not abuse its discretion in striking plaintiff's "redundant and immaterial" allegations of academic theft and fraud under FRCP 12(f)).

WL 2968085, at *23, and issued a Final Written Decision finding claims 20 and 21 of the '506 patent unpatentable and denying Dr. Arunachalam's motion to amend to add proposed new claims 22–49, *SAP*, 2017 WL 6551158, at *1; *see id.* at *23 (finding that "the subject matter of claims 20 and 21 of the '506 [p]atent are directed to ineligible subject matter under 35 U.S.C. § 101" and obvious over the prior art). The District Court dismissed Dr. Arunachalam's claim of infringement of claims 20 and 21 of the '506 patent, noting that "[c]laims 1–19 had been cancelled earlier" and "[t]hus, the PTAB decision meant there [we]re no valid claims in the '506 patent to assert." C.A. 129. We affirmed the District Court's dismissal. *See Arunachalam III*, 759 F. App'x at 934.

Dr. Arunachalam's bizarre and scandalous statements extend to this court, the Judiciary, and indeed the Government as a whole. She alleges that we have colluded with the District Court, the PTAB, and Appellees in a "collateral estoppel farce propagated against multiple [c]ourts," Appellant's Br. 13, and that we have "committed treason," *id.* at 18; *see id.* (claiming that "[t]his [c]ourt needs to have a criminal investigation started against all the Constitutional tortfeasors," and "the Judges, [the] PTAB Administrative Judges[,] and lawyers who breached their solemn oaths of office . . . must be arrested"). Dr. Arunachalam states that we have "failed to apply Governing Supreme Court Precedents," as well as our own precedent, to her case, and that our "rulings are all void." *Id.* at 13. She claims that "the Courts and [the PTAB]" "injured" her "through a treasonous breach of solemn oaths of office by Judges and officers of the court and the corruption of fraud of the court and the [PTAB]." *Id.* at 17. Dr. Arunachalam also alleges that "the Judiciary[,] the Executive Branch . . . and [the] Legislative Branch . . . violat[ed] the Contract Clause and the Separation of Powers Clauses of the Constitution[.]" *Id.* at 12–13. This is far from an exhaustive

list of Dr. Arunachalam's allegations. *See generally id.* 1–58; Reply Br. 1–27.

Further, Dr. Arunachalam's scandalous and unsupported statements are largely irrelevant to the issues on appeal and take up the vast majority of her briefing, hindering our ability to review her pertinent arguments, if any. Despite acknowledging that her appeal "stems from the District Court's [orders] granting Defendants-Appellees' Motion for Attorneys' Fees[,]" Appellant's Br. 7, Dr. Arunachalam's briefing is almost entirely comprised of accusations pertaining to the PTAB's cancellation of the '506 patent and the District Court's dismissal of her Amended Complaint, s*ee generally id.* 1–58; Reply Br. 1–27, matters on which we have already ruled and which are not at issue on appeal, *see Arunachalam III*, 759 F. App'x at 933–34 (affirming the District Court's dismissal of all counts of the Amended Complaint and explaining that Dr. Arunachalam's failure to appeal the PTAB Decision makes its decision "final" and not subject to collateral attack "through a separate litigation"). Thus, Dr. Arunachalam's scandalous and irrelevant statements impede meaningful review of her arguments. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) ("'Judges are not like pigs, hunting for truffles buried in briefs.'" (quoting *Dunkel*, 927 F.2d at 956)).[15]

---

[15] Additionally, Dr. Arunachalam's briefing contains no citations to the record, despite making numerous factual allegations. *See generally* Appellant's Br. 1–58; Reply Br. 1–27; FED. R. APP. P. 28(a)(6) ("The appellant's brief must contain . . . a concise statement of the case setting out the facts relevant to the issues submitted for review . . . with appropriate references to the record[.]"), 28(a)(8)(A) (stating that an appellant's brief must include an argument containing the "appellant's contentions . . . with

The scandalous and irrelevant statements in Dr. Arunachalam's briefing raise the judicial management concerns the Supreme Court identified in *Chambers*. *See* 501 U.S. at 43 (describing the courts' need "to achieve the orderly and expeditious disposition of cases" (internal quotation marks and citation omitted)); *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1578 (Fed. Cir. 1991) ("[A]ppellate courts must consider the importance of conserving scarce judicial resources."). To this end, courts are "vested, by their very creation," with "certain implied powers." *Chambers*, 501 U.S. at 43 (internal alterations, quotation marks, and citation omitted); *see Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1326 (Fed. Cir. 2011) (stating that "courts have the inherent power to control litigation by imposing sanctions appropriate to rectify improper conduct by litigants" (internal quotation marks and citation omitted)). These powers are wide-ranging. *See Chambers*, 501 U.S. at 43 ("[A] federal court has the power to control admission to its bar and to discipline attorneys who appear before it."); *id.* at 44 (holding that courts may punish for contempt those who are "disobedien[t] to the orders of the Judiciary"); *id.* 44–46 (holding that courts "may bar from the courtroom a criminal defendant who disrupts a trial[,]" may "assess attorney[s'] fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," and "may act *sua sponte* to dismiss a suit for failure to prosecute" (internal quotation marks and citation omitted)).

Particularly relevant here, while these "inherent powers must be exercised with restraint and discretion," "[a] primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44–45; *cf.* FED. R. APP. P. 38 (providing that this court may impose sanctions if we "determine[] that an

---

citations to . . . [the] parts of the record on which the appellant relies").

appeal is frivolous"); *Nat'l Org. of Veterans Advocates, Inc. v. Sec'y of Veterans Affs.*, 710 F.3d 1328, 1335 (Fed. Cir. 2013) ("[W]hile sanctions must be fashioned with restraint and discretion, courts of justice can fashion appropriate monetary and nonmonetary sanctions to rectify misbehavior.").

Even according Dr. Arunachalam wider latitude in view of her pro se status, her baseless, outlandish, and irrelevant invective degrades the dignity and decorum of the court and hampers "the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43 (internal quotation marks and citation omitted). Sanctions are appropriate to address and discourage such abusive conduct. *See Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1554 (Fed. Cir. 1983) (imposing sanctions and explaining that "we are duty-bound to guard our segment of the judicial process against abuse"). We have considered the range of sanctions discussed above. *See Chambers*, 501 U.S. at 43–46. In view of the fact that monetary sanctions have already been assessed in the underlying case, as well as the form of Dr. Arunachalam's misconduct, we conclude that a lesser sanction is appropriate.[16] Accordingly, the scandalous and irrelevant statements in Dr. Arunachalam's briefs alleging, inter alia, "obstruction of justice," "a corrupt criminal enterprise," "libel," "willful misrepresentations," and "fraud" by the District Court, Judges Stark and Andrews, and Appellees' counsel, Appellant's Br. 2–17, as well as "treason," collusion in a "collateral estoppel farce," and "fraud" by the PTAB, this Court and its Judges, and "the Courts" generally, *id.* at 13–17, are stricken.

---

[16]    In addition to the assessments of costs, further submissions of a similar character would raise the possibility of monetary sanctions from this Court. *See Chambers*, 501 U.S. at 44–45.

CONCLUSION

We have considered Dr. Arunachalam's remaining arguments and find them unpersuasive.[17]  Accordingly, the Judgment of the U.S. District Court for the District of Delaware is

**AFFIRMED**

COSTS

Costs to IBM, SAP, and JPMorgan.

---

[17]    In her Notice of Appeal, Dr. Arunachalam stated that, in addition to the District Court's grant of monetary sanctions, she was also appealing the denials of her Motion to Enforce the Mandated Prohibition and Motion for the Court to Vacate Its Unconstitutional Orders.  Notice of Appeal 1–2, ECF No. 1.  Yet, Dr. Arunachalam's briefs did not address the reasons for the District Court's denial of these motions—namely, that she had filed the first motion "in eight different cases," without explaining its relevance or untimeliness, and that the second motion was an attempt to re-challenge the dismissal of her Amended Complaint, which we had already affirmed.  C.A. 2; *see Arunachalam III*, 759 F. App'x at 934; *see generally* Appellant's Br. 1–58; Reply Br. 1–27.  Accordingly, these issues are waived.  *See SmithKline Beecham Corp.* 439 F.3d at 1320.