NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**COREY L. SANDERS,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-1067

---

Appeal from the United States Court of Federal Claims in No. 1:23-cv-00103-EJD, Senior Judge Edward J. Damich.

---

Decided:  January 28, 2025

---

COREY L. SANDERS, Maple Heights, OH, pro se.

JANA MOSES, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, LOREN MISHA PREHEIM.

---

Before DYK, REYNA, and STOLL, *Circuit Judges*.

PER CURIAM.

Corey Sanders appeals the dismissal of his action by the U.S. Court of Federal Claims (the "Claims Court"). *Sanders v. United States*, No. 23-103, 2023 WL 6307661 (Fed. Cl. Sept. 28, 2023). Mr. Sanders alleged that the U.S. Army: (1) improperly discharged him in 2003 by giving him a discharge document that he did not sign; and (2) erred by failing to (a) correct his military records, (b) retroactively promote him and provide associated backpay, (c) provide his family legal assistance and transition benefits upon his discharge, and (d) award disability retirement based on Post-Traumatic Stress Disorder (PTSD) and antisocial personality disorder. The Claims Court held that Mr. Sanders' claims related to the 2003 discharge—including correction of his military records, retroactive promotion, and associated backpay—were time-barred, that Mr. Sanders failed to identify a money-mandating statute for his legal assistance and transition benefits claim, and that he failed to state a claim for disability retirement. For the following reasons, we affirm the dismissal.

## BACKGROUND

Mr. Sanders enlisted in the U.S. Army Reserve Delayed Entry Program on March 18, 2002. SAppx360–62.[1] According to his March 2002 medical examination report, Mr. Sanders was qualified for service at the time of his enlistment. On April 2, 2002, Mr. Sanders enlisted in the active Army for a contract period of three years. On February 25, 2003, after a bout of misconduct—including being absent without leave—the Army discharged

---

[1] SAppx refers to the Supplemental Appendix filed by the Government.

Mr. Sanders. At that time, he was stationed in Friedberg, Germany.[2]

On December 3, 2002, before his separation, the Army medically cleared Mr. Sanders for discharge. On February 11, 2003, also before his separation, Mr. Sanders met with a military attorney, who advised him of the basis of the contemplated separation and its effects, and the rights available to him. Though he had the opportunity, Mr. Sanders did not submit any statements for the Army to consider before his separation. *See* SAppx399–403.

At the time of discharge, the Army issued Mr. Sanders a Discharge Document Form 214 ("DD Form 214"). SAppx451; *Sanders*, 2023 WL 6307661, at *2. Under block "21," "Signature of Member Being Separated," the form noted, "Soldier Not Available For Signature."[3] *Sanders*, 2023 WL 6307661, at *2. The form indicated that the "discharge was for misconduct with a character of service

---

[2] As the Claims Court described, Mr. Sanders alleged (without explaining) that upon discharge the Army stranded him in Germany and that German authorities deported his daughter from Germany. The reason why Mr. Sanders remained in Germany after his discharge is not in the record, however. *Cf.* SAppx214 ("[Mr. Sanders'] application to the U.S. Department of State for a regular-fee U.S. Passport in May 2003 does not show an error on the part of the Army or that he was stranded in Germany upon discharge"). At the time he filed this appeal in 2023, Mr. Sanders was incarcerated in Ohio. *See, e.g.*, ECF Nos. 1, 3.

[3] The Claims Court explained that it was "unclear" why Mr. Sanders did not sign the separation papers, but it determined that "this issue is immaterial" because Mr. Sanders' "claims challenging his discharge are time-barred." *Sanders*, 2023 WL 6307661, at *2 n.5.

of under honorable conditions (general) and [that Mr. Sanders] was provided a reentry code of 3."[4]  *Id.*

Mr. Sanders appealed his discharge to several agencies within the Army, including to the Army Discharge Review Board (ADRB), the Army Board for Correction of Military Records (ABCMR), and the Joint Service Review Activity (JSRA).  The ADRB reviewed his claims three times and the ABCMR reviewed his case two times.  Both Boards denied his applications for correction of his military records. Relevant here, the March 2018 ABCMR Record of Proceedings provides: "There is no evidence of record and [Mr. Sanders] did not provide any evidence showing he suffered from or was treated for PTSD, PTSD-like symptoms, or any other mental or behavioral health conditions during his term of service."  SAppx199.

In July 2018, Mr. Sanders underwent a U.S. Department of Veterans Affairs ("VA") medical examination.  The VA examiner diagnosed Mr. Sanders with antisocial personality disorder and unspecified anxiety disorder.  The VA ultimately "denied service connection for an acquired psychiatric disorder."  *Sanders*, 2023 WL 6307661, at *5.

On January 20, 2023, Mr. Sanders filed suit before the Claims Court, alleging that the Army:  (1) improperly discharged him in 2003 by giving him a discharge document that he did not sign; and (2) erred by denying him medical disability, a discharge upgrade, retroactive promotion, and transition benefits.  In September 2023, the Claims Court granted the Government's motion to dismiss.

Mr. Sanders appeals.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

---

[4]    A reentry code of "3" "only authorizes a reenlistment of the discharged soldier if he is granted a waiver." *Sanders*, 2023 WL 6307661, at *3.

## DISCUSSION

We review a Claims Court decision to dismiss for lack of jurisdiction de novo. *Diaz v. United States*, 853 F.3d 1355, 1357 (Fed. Cir. 2017). We also review the Claims Court's dismissal of a complaint for failure to state a claim upon which relief may be granted de novo. *Hearts Bluff Game Ranch, Inc. v. United States*, 669 F.3d 1326, 1328 (Fed. Cir. 2012). Mr. Sanders bears the burden of establishing jurisdiction by preponderant evidence. *Diaz*, 853 F.3d at 1357.

In his informal brief and appended materials, which are at points difficult to decipher, Mr. Sanders appears to raise the following issues and/or arguments on appeal: (1) the Government concealed facts from him; (2) his disability retirement claim; (3) alleged due process violations; (4) "[t]he ABCMR and ADRB were arbitrary and capricious," Appellant's Br. 2; (5) he was "never legally discharged from [the] military according to law, and [he is] MIA/POW during actual war," Appellant's Br. 6; (6) the Claims Court applied the wrong law and should have applied 10 U.S.C. § 1168(a), which covers discharge from active duty; (7) the Claims Court failed to consider "constructive service credit entitlement," Appellant's Br. 7; (8) the Government violated the North Atlantic Treaty Organization Status of Forces Agreement (NATO–SOFA); (9) the DD Form 214 should be considered void; (10) he "was not provided final accounting of pay before discharge or even in a timely manner," Appellant's Br. 12–13; (11) several awards and entitlements are not listed on his DD Form 214; (12) the VA improperly denied his request for benefits; and (13) his "educational accomplishments are not listed" in "his official military record," Appellant's Br. 16–17.

Mr. Sanders asks us to apply the Servicemembers' Civil Relief Act, direct the Army to evaluate his medical records, award backpay, and order transfer to a VA medical

facility for treatment of service-connected disabilities, among other things.  The Government asks us to affirm, arguing that Mr. Sanders fails to address the Claims Court's reasons for its dismissal and that most of his arguments are waived.

For the following reasons, we affirm the Claims Court's decision to dismiss Mr. Sanders' action.  We address each of his contentions in turn.

I

We first address Mr. Sanders' assertion that he "demonstrated that the government concealed facts" from him and, as a result, he "was unable to know anything was wrong."  Appellant's Br. 1.  There are two issues with this contention:  waiver and contradiction by the record.

First, in evaluating whether the accrual of Mr. Sanders' claim was suspended,[5] the Claims Court explained that "[Mr. Sanders] *does not allege nor show that the Government concealed any acts* of which he was unaware at the time of discharge making his discharge unlawful.  *Nor does he allege* that the wrongfulness of his discharge was 'inherently unknowable' at the time of discharge."  *Sanders*, 2023 WL 6307661, at *8 (emphases added).   In other words, before the trial court, Mr. Sanders did not allege that the Government concealed information or that certain circumstances were inherently unknowable.  He cannot vaguely raise such allegations for the first time on appeal to our court.  Even where a party appears pro se, as Mr. Sanders does here, "[i]ssues not properly raised before the [trial] court are waived on appeal."  *Stauffer v. Brooks Bros. Grp., Inc.*, 758 F.3d 1314, 1322 (Fed. Cir. 2014); *see*

---

[5]    As we discuss further in Part IV, a "claim based on an alleged unlawful discharge accrues on the date of discharge."  *Kennedy v. United States*, 845 F.3d 1376, 1382 (Fed. Cir. 2017).

*also, e.g.*, *Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 198–99 (9th Cir. 1995) ("Although a *pro se* litigant like Brazil may be entitled to great leeway when the court construes his pleadings, those pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong. Brazil's complaint, fairly read, gave the Navy no inkling that he wished to bring his ultimate termination before the district court for review. We therefore find that the issue was not raised below; it is waived on appeal.").

Second, as the Claims Court explained, "[Mr. Sanders'] allegations regarding the wrongfulness of his discharge concern factual circumstances of which he was fully aware at the time of discharge." *Sanders*, 2023 WL 6307661, at *8. At the time of discharge on February 25, 2003, after Mr. Sanders met with a military attorney who advised him of the basis of his separation, its effects, and the rights available to him, the Army issued Mr. Sanders the DD Form 214. *Id.* at *2. Less than six months later, on August 21, 2003, Mr. Sanders filed an application with the ADRB, requesting a change in his reentry code on his DD Form 214 from a "3" to a "1," so that he could "rejoin [his] unit." *Id.* at *3 (alteration in original); SAppx453. Plainly, Mr. Sanders had the DD Form 214 in his possession during and shortly after his discharge. Mr. Sanders' allegation that he "was unable to know anything was wrong," Appellant's Br. 1, is thus belied by the record. Accordingly, we reject this contention by Mr. Sanders.

To the extent that Mr. Sanders challenges the Claims Court's determination that "there is no basis for accrual suspension, and thus [his] challenges to his discharge are time-barred," *Sanders*, 2023 WL 6307661, at *8, we see no error by the trial court. "The accrual suspension rule is strictly and narrowly applied: the plaintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or [he] must show that [his] injury was inherently unknowable at the

accrual date." *Martinez v. United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2003) (en banc) (cleaned up), *cert. denied*, 540 U.S. 1777 (2004).  For the reasons explained above, Mr. Sanders has not made this showing.

II

We next address Mr. Sanders' disability retirement claim and his contention that "[t]he ABCMR and ADRB were arbitrary and capricious," Appellant's Br. 2.

As the Claims Court explained, "[t]he ABCMR and ADRB both concluded [Mr. Sanders] was fit for duty at the time of his discharge" and both Boards "found that no support existed for the notion that referral to a Medical Evaluation Board, the first step towards establishing entitlement to medical retirement, was indicated at any time during [Mr. Sanders'] service." *Sanders*, 2023 WL 6307661, at *9 (footnote omitted); *see, e.g.*, SAppx173–74 (December 2002 mental health evaluation resulted in "no evidence of treatable psychiatric disorder that warranted disposition through medical channels or a Medical Evaluation Board"); SAppx221 ("[Mr. Sanders'] medical records do NOT at the time of his discharge reasonably support his having had a boardable medical condition" and "he did meet mental-health standards"); *see also Barnick v. United States*, 591 F.3d 1372, 1375 (Fed. Cir. 2010) ("A claim for disability is first considered by a Medical Evaluation Board ('MEB'), which reviews the individual's medical records to determine the nature of the disability.").  The Claims Court also explained that Mr. Sanders "does not allege that the decisions of the military review boards were irrational or unsupported by substantial evidence" and that he "does not articulate any procedural defects or failure on the part of the Army to follow its own regulations or procedures during his separation." *Sanders*, 2023 WL 6307661, at *9.  Instead, as the Government points out, Mr. Sanders raises the allegation that the ABCMR's and ADRB's decisions were arbitrary and capricious for the first time in this

appeal.  Mr. Sanders has thus waived this contention.  *See Stauffer*, 758 F.3d at 1322; *Brazil*, 66 F.3d at 198–99.

Because the record contains no evidence that Mr. Sanders suffered from a medical condition while on active duty that rendered him unfit to serve, we affirm the Claims Court's determination that he failed to state a claim for disability retirement.  Disability retirement cases "are governed by 10 U.S.C. § 1201," *Chambers v. United States*, 417 F.3d 1218, 1224 (Fed. Cir. 2005), which provides that, "[u]pon a determination by the Secretary concerned that [an eligible member] is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay or while absent . . . , the Secretary may retire the member, with retired pay."  10 U.S.C. § 1201(a).  But, as the ABCMR explained in March 2018, Mr. Sanders' "available service records do not show" that "he suffered from a medical condition, physical or mental, that affected his ability to perform the duties required by his military occupational specialty and/or grade or rendered him unfit for military service."  SAppx193, 199.

### III

We next turn to Mr. Sanders' contentions regarding due process and NATO–SOFA,[6] which we reject for the following reasons.

---

[6]    "Litigation against members of foreign military forces who are within the United States (and against members of the U.S. military abroad) is guided by so-called status-of-forces agreements, or 'SOFAs.'"  *Moore v. United Kingdom*, 384 F.3d 1079, 1083–84 (9th Cir. 2004).  NATO–SOFA "contain[s] provisions that create an implied obligation for the sending state to return an accused serviceman to the host state for prosecution when the host state has

We have explained that, in general, the Claims Court does "not have jurisdiction over money claims that are based upon an alleged violation by the government of the due process clause. This is so because the due process clause does not obligate the government to pay money damages." *Collins v. United States*, 67 F.3d 284, 288 (Fed. Cir. 1995). Moreover, to the extent that Mr. Sanders' due process claims have an independent money-mandating statutory basis, the ADRB explained that Mr. Sanders' "discharge was consistent with the procedural and substantive requirements of the regulation, was within the discretion of the separation authority, and [Mr. Sanders] was provided full administrative due process," SAppx50, and we see no error with this conclusion. Finally, Mr. Sanders raises his due process argument for the first time on appeal and thus has waived the argument.

As for NATO–SOFA, we agree with the Government that "it is unclear" how it applies "to any of the matters in this case, and regardless, Mr. Sanders failed to raise this argument before the review boards and the trial court." Appellee's Br. 21–22. Again, the reason why Mr. Sanders remained in Germany after his discharge is not in the record. While we acknowledge that Mr. Sanders appears pro se, his assertion regarding NATO–SOFA is "insufficiently developed." *Arunachalam v. Int'l Bus. Machs. Corp.*, 989 F.3d 988, 999 (Fed. Cir. 2021). Accordingly, Mr. Sanders has waived his argument regarding NATO–SOFA. *See id.*; *Stauffer*, 758 F.3d at 1322; *Brazil*, 66 F.3d at 198–99.[7]

---

been given the primary right to exercise jurisdiction over the accused." *In re Burt*, 737 F.2d 1477, 1478–79 n.2 (7th Cir. 1984).

[7]    On page 11 of his brief, Mr. Sanders points us to *United States v. Melanson*, 50 M.J. 641 (A. Ct. Crim. App. 1999). In *Melanson*, the appellant was "outprocessing from

IV

We now turn to Mr. Sanders' other allegations related to his discharge: that he was "never legally discharged from [the] military according to law, and [he is] MIA/POW during actual war," Appellant's Br. 6; that the Claims Court applied the wrong law and should have applied 10 U.S.C. § 1168(a)[8]; that the Claims Court failed to consider "constructive service credit entitlement,"[9] Appellant's

---

his unit" in Germany pursuant to his approved separation for wrongful drug use. *Id.* at 643. The appellant's company commander "received both command and legal advice" to let appellant depart Germany to go home to Massachusetts, unless an eyewitness could positively identify the appellant as one of the people who attacked a Staff Sergeant outside of a club in Germany. *Id.* Then, two eyewitnesses identified appellant as one of the attackers, the command revoked the appellant's administrative separation, and German authorities took the appellant into custody. *Id.* In *Melanson*, "[t]he question of in personam jurisdiction in appellant's case was extensively briefed by the parties and addressed through the taking of testimony and evidence at trial." *Id.* The situation presented in *Melanson* is thus highly distinguishable from the record now before us. Accordingly, we do not find citation to *Melanson* persuasive.

[8]     A servicemember "may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, and his final pay or a substantial part of that pay, are ready for delivery to him or his next of kin or legal representative." 10 U.S.C. § 1168(a).

[9]     "Under the constructive service doctrine, 'military personnel who have been illegally or improperly separated from service are deemed to have continued in active service until their legal separation.'" *Barnick*, 591 F.3d at 1379

Br. 7; that the DD Form 214 should be considered void; and that he "was not provided final accounting of pay before discharge or even in a timely manner," Appellant's Br. 12–13.

The Claims Court held that Mr. Sanders' challenges to "his 2003 discharge and related grievances are time-barred." *Sanders*, 2023 WL 6307661, at *6. It agreed with the Government's argument that "[Mr. Sanders'] claims challenging his discharge from the Army . . . are plainly barred by the six-year statute of limitations set forth in 28 U.S.C. § 2501." *Id.* at *7. We, too, agree with the Government. As we explained in *Martinez*:

> The service member . . . has the right to sue immediately upon discharge for the funds improperly being withheld. . . . [A] Tucker Act claim for back pay accrues all at once at the time of discharge . . . . If the plaintiff does not file suit within the six-year limitation period prescribed in 28 U.S.C. § 2501, the plaintiff loses all rights to sue for the loss of pay stemming from the challenged discharge. That is, the claim accrues "at one time, once and for all," on the date of discharge . . . .

333 F.3d at 1303–05 (quoting *Mathis v. United States*, 391 F.2d 938, 939 (Ct. Cl. 1968)) (declining the invitation "to announce a new rule that a service member's cause of action challenging his discharge in the Court of Federal Claims does not accrue until after the service member has exhausted all administrative remedies before a correction board").

The Army discharged Mr. Sanders on February 25, 2003. He filed his Claims Court Complaint on January 20,

---

(quoting *Christian v. United States*, 337 F.3d 1338, 1347 (Fed. Cir. 2003)).

2023, almost twenty years later.  Because Mr. Sanders did not file suit within the six-year limitation period, he lost all rights to sue for loss of pay stemming from his challenged discharge.  *Martinez*, 333 F.3d at 1304; *see also id.* at 1316 (statutes of limitations for causes of action against the United States are jurisdictional).[10]  We, like the Claims Court, thus reject Mr. Sanders' untimely challenges related to his discharge.

V

We next address Mr. Sanders' allegations concerning his awards and entitlements not being listed on his DD Form 214, Appellant's Br. 13–15, and his educational accomplishments not being listed in "his official military record," Appellant's Br. 16–17.

As for the contention that not all his awards and entitlements are listed on his discharge form, a "claim for a military decoration" is "not a claim for money damages, and, accordingly, does not meet the standards of the Tucker Act." *Curtis v. United States*, 33 Fed. Cl. 586, 589 (1995), *aff'd*, 86 F.3d 1175 (Table), 1996 WL 232489 (Fed. Cir. 1996); *see also, e.g.*, *Visconi v. United States*, 455 F. App'x 986, 987–88 (Fed. Cir. 2012) (complaint requesting correction of service records to reflect awards of disputed medals and citations sought only equitable relief, over which the Tucker Act does not provide independent jurisdiction). "Although the Tucker Act has been amended to permit the Court of Federal Claims to grant equitable relief ancillary to claims for monetary relief *over which it has jurisdiction*," *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed. Cir. 1998) (emphasis added), as we

---

[10]    We also note that Mr. Sanders failed to raise any argument regarding constructive service or final accounting of pay before the Claims Court.  As such, these claims would be waived if they were not already time-barred.

have explained, Mr. Sanders' discharge-related claims are time-barred and so the Claims Court has no jurisdiction over them. *See, e.g.*, *MacLean v. United States*, 454 F.3d 1334, 1336 (Fed. Cir. 2006). Moreover, the Claims Court has held that the decision whether to award a medal is one left to the discretion of the military. *See Wilson v. United States*, 24 Cl. Ct. 842, 843–44, 846 (1992) (the Air Force's decision to award one medal to the plaintiff instead of another is "purely a discretionary one and therefore is not reviewable by this court").

Mr. Sanders also raises the contention that his educational accomplishments are not listed in his official military record for the first time on appeal to our court. As such, he has waived it. *See Stauffer*, 758 F.3d at 1322; *Brazil*, 66 F.3d at 198–99.

## VI

Last, we address Mr. Sanders' contention that the VA improperly denied his request for service connection for PTSD and his accompanying statements that he was "r[u]n over by a truck and walk[s] with a cane now." Appellant's Br. 15–16. Though we empathize with his plight, Mr. Sanders provides no further details of this truck accident, including when it happened, and the record shows that Mr. Sanders "did not provide any evidence showing he suffered from or was treated for PTSD, PTSD-like symptoms, or any other mental or behavioral health conditions during his term of service." SAppx199; *see also* SAppx183 (VA examiner determined that "it was less likely than not any psychiatric disorder began during service, was caused by service, or was permanently aggravated by [Mr. Sanders'] military service"). For our court "to reach the merits of an issue on appeal, it must be adequately developed," and, unfortunately, this contention does not meet that standard. *Arunachalam*, 989 F.3d at 999 (citation omitted).

CONCLUSION

We have considered Mr. Sanders' remaining conten-
tions, many of which are also raised for the first time on
appeal and/or insufficiently developed, and they do not per-
suade us that the Claims Court erred.  For the foregoing
reasons, we affirm the dismissal by the Claims Court.

**AFFIRMED**

COSTS

No costs.